UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ROBERT BATES,

    Plaintiff,

vs.

CASE MANAGER O'CONNOR, *et al.,*

    Defendants.

Case No. 1:23-cv-17

Hopkins, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

This civil rights action is now before the Court on Defendants motion summary judgment. (Doc. 27) and the parties responsive memoranda. (Docs. 31, 32).

**I.    Background and Facts**

On January 10, 2023, Plaintiff filed this civil action under 42 U.S.C. § 1983 alleging that on September 11, 2022, two prison officials (O'Connor and Hood) violated his Eighth Amendment rights when they were deliberately indifferent to his risk from an attack by another inmate. (Doc. 1). Notably, Plaintiff's unverified complaint alleges that on September 8, 2022, Plaintiff told Defendant O'Connor that another inmate (Latrell Richey) threatened to beat him up because Plaintiff was labeled a "snitch." Plaintiff alleges that he told O'Connor that he feared for his life and asked to be placed in protective control (PC). Plaintiff claims that O'Connor told him "you don't need PC you'll be fine". (Doc. 1, ¶ 7). Plaintiff was then assaulted by Richey in the chow hall. As a result, Plaintiff claims that Defendant O'Connor was deliberately indifferent and failed to protect him. Id.

Plaintiff's complaint also alleges that Defendant Hood watched as Plaintiff was kicked in the face and on the ground bleeding. Plaintiff contends that Defendant Hood failed to do his job by not attempting to break up the assault. As a result of Defendant

Hood's alleged failure to intervene, Plaintiff claims that he suffered physical injuries and was placed in solitary confinement. Id. at ¶ 9. Plaintiff claims that Defendant Hood's actions violate his rights to be free from assault under the Eighth Amendment. Id.

Plaintiff moved for summary judgment (Docs. 19, 21), which was denied. (Doc. 25). Defendants now move for summary judgment.

*A. September 11, 2022, Incident*

The September 11, 2022 incident was captured by video, and shows the following:

The video recording begins at 9:02 A.M. and 15 seconds (9:02:15 A.M.) and ends at 9:04:00 A.M. (See Doc. 27, Ex. C, SOCF Video, "SOCF W-IDR").

9:02:16, Plaintiff can be seen sitting in the middle-left part of the frame at a cafeteria table next to another prisoner, both wearing white shirts and dark pants. Inmate Latrell Richey, can be seen walking in Plaintiff's general direction. He does not appear to verbally engage with Plaintiff or anyone else.

9:02:19, Richey suddenly punches Plaintiff's head. At this time, Officer Hood is seated at his post near the entrance, approximately half the distance of the room away from the altercation.

9:02:22, Richey continues the physical altercation by punching Plaintiff. Officer Hood sees the altercation and has risen to his feet and is transmitting a message on his radio while moving towards Plaintiff's location. Fourteen prisoners can be observed in this room. Officer Hood is the only SOCF employee present.

By 9:02:28, the altercation is ongoing, Officer Hood is completing his transmission requesting backup assistance, and begins shouting verbal commands for the inmates to

2

cease. Simultaneously, another large inmate can be seen walking directly towards Officer Hood as he moves towards the altercation.

By 9:02:37, Officer Hood approaches the area where the altercation is taking place and continues to announce loud, verbal de-escalation orders at the inmates.

By 9:02:38, the altercation has abated as a result of Officer's Hood's orders.

By 9:02:40, Officer Hood can be seen pointing at Richey to relocate to the wall, which Richey then does. Plaintiff then relocates to the wall at a considerable distance from Richey.

By 9:02:49, a backup officer arrives to assist. By 9:03:13, both inmates can be seen being escorted away.

(Doc. 27, Ex. C, SOCF Video, "SOCF W-IDR").

Officer Hood's declaration also states that on September 11, 2022, he was a relief officer at SOCF and that his assigned post could change daily. (Doc. 27, Def. Ex. D, ¶ 4).

On September 11, 2022, Officer Hood was directed to post at the doorway of the Inmate Dining Room ("IDR"). (Doc. 27, Def. Ex. D, ¶ 5). As the only officer in a room with twelve inmates, positioning him near the exterior door serves to prevent a circumstance in which the officer is outnumbered by inmates without a means of quick egress. Id.

That day, Officer Hood witnessed inmate Latrell Richey unexpectedly begin assaulting the Plaintiff in the IDR. (Def. Ex. D, ¶ 7). Officer Hood had no foreknowledge that Inmate Richey posed a danger to Plaintiff or anyone else. Id. Inmate Richey previously showed no signs of aggression towards Plaintiff that day. Id. Officer Hood

3

immediately stood, began radioing for backup, and moved towards the altercation, despite the risks posed by leaving his post at the IDR doorway. Id. at ¶¶8-9.

After radioing for backup, Officer Hood did not sprint to the altercation because another inmate was moving directly in his direction. Id. According to Officer Hood, this is atypical behavior, as inmates generally move away from inmate altercations when an officer approaches. Id. Officer Hood could not ascertain whether the other inmate intended to deter his intervention, or physically engage with him in a violent manner. Id. Nevertheless, Officer Hood moved, without pause, towards the altercation and used the loud verbal de-escalation measure he had been instructed to use. Officer Hood's verbal mandates were successful, and the inmates separated. This entire sequence happened in nineteen seconds.

*B. ODCR Policies*

ODRC institutions, including SOCF, utilize several security procedures to mitigate against the possibility of Ohio prisoners harming other prisoners in their living areas and work spaces. Three of those policies bear discussion here: the individual separation procedure, the work plan procedure, and the protective control (PC) procedure. When an inmate is at a known risk of harm from another inmate, the individual separation procedure administratively prevents those inmates from working or residing in the same area. (Doc. 27, Def. Ex. B, Dec.Oppy, ¶ 3a). The work plan procedure ensures a prison official reviews an inmate's file before placing them in a new job assignment, and also gives the inmate an opportunity to appeal job assignments. (Doc. 27, Def. Ex. B, ¶ 3b). The PC procedure permits inmates to request placement outside of the general population if they believe that are at risk of any specific harm. (Doc. 27, Def. Ex. B, ¶ 3c).

SOCF has a process whereby inmates can receive an individual separation order. (Doc. 27, Def. Ex. B, ¶ 3a; Def. Ex. B-1). A separation order is an administrative directive designed to prevent contact between separated inmates. Id. An inmate can also request a separation order. Id. On September 11, 2022, Plaintiff did not have a separation order against any inmate, nor had he requested a separation order against any inmate. (Doc. 27, Def. Ex. B, ¶ 3a.ii.; Def. Ex. A, O'Connor Decl., ¶ 7). Plaintiff made no PC request until November of 2022. (Doc. 27, Def. Ex. B, ¶ 3a.i. and ii.; Def. Ex. B-4). The November PC request was not made regarding an inmate. Id.

Mr. O'Connor was the SOCF official responsible for Plaintiff's assignment to IDR. (Doc. 27, Def. Ex. A, ¶ 3). In September of 2022, there was a particularly high need for prisoner staffing in the IDR. Id. Mr. O'Connor reviewed Plaintiff's record before notifying him of the potential placement. (Doc. 27Def. Ex. A, ¶ 4). This review included Plaintiff's rules infraction record, his risk for escape, any documented Prison Rape Elimination Act (PREA) considerations, inmate separation orders, and anything else contained in the file. Id. Mr. O'Connor informed Plaintiff of the proposed reassignment, and met with Plaintiff so that he could complete the paperwork and discuss any necessary matters. (Doc. 27, Def. Ex. A, ¶¶ 4-5, 10). Plaintiff made no mention of an inmate or group of inmates in the IDR that posed any risk to him. Id. Nor did he request PC placement at that time. Id. at ¶¶ 5-6. Plaintiff also did not submit any written materials or documentation for consideration, and he expressly declined his right to appeal the placement on the DRC Form 2099. (Id. at ¶¶5, 10; Doc. 27, Def. Ex. B, ¶ 3.b.iv.-vi.; Def. Ex. B-3).

For the reasons outlined below, Defendants' motion is well-taken.

5

## II. Analysis

### A. Standard of Review

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper, "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986). "A fact is 'material' and precludes a grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)(quoting Black's Law Dictionary 881 (6th ed. 1979)). The purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. *Lashlee v. Sumner*, 570 F.2d 107, 111 (6th Cir. 1978).

A court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986). Moreover, "[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989)(citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record, as it has been established, which create a genuine issue of material fact. *Fulson v. Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio

6

1992). "The mere existence of a scintilla of evidence in support of the non-movant is not sufficient; there must be sufficient evidence upon which a jury could reasonably find for the nonmovant." *Anderson*, 477 U.S. at 252. The Sixth Circuit has instructed lower courts that "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *EEOC v. Ford Motor Corp.*, 782 F.3d 753, 770 (6th Cir. 2015)(en banc). In other words, "[w]hen opposing parties tell two different stories, one which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt the version of the facts for purposes of ruling on a motion for summary judgment*." Scott v. Harris*, 550 U.S. 372, 380 (2007). The moving party has the burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548 (1986). Once the moving party has met its burden of production, the nonmoving party cannot rest on the pleadings, but must present significant probative evidence in support of his case to defeat the motion for summary judgment. *Anderson*, 477 U.S. at 248-49.

Furthermore, a party asserting that a fact cannot be genuinely disputed must support the assertion by: (1) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (2) showing that the materials cited do not establish the presence of a genuine dispute. Fed. R. Civ. P. 56(c).

Thus, the moving party must "designate specific facts in affidavits, depositions, interrogatories, or other factual material" from which a reasonable jury could find in his favor*. Maston v. Montgomery Cty. Jail Med. Staff Pers.*, 832 F.Supp.2d 846, 849 (S.D.

7

Ohio 2011). He "cannot rest on the mere allegations of the pleadings." Id. at 851-52 (holding that a pro se party cannot rely on allegations or denials in unsworn filings when opposing a motion for summary judgment).

*B. Defendants' Motion for Summary Judgment is Well-Taken*

Defendants argue that they are entitled to summary judgment because ODRC policy, the Eighth Amendment, and common-sense dictate that a reasonable prison official take the exact actions that Defendant Hood undertook. They also contend that no constitutional violation occurred, and therefore Defendants are entitled to Qualified Immunity and Eleventh Amendment Immunity

*1. Eleventh Amendment Immunity*

At the outset, the Court notes that the Eleventh Amendment to the United States Constitution bars suits against either a state or agencies of a state by citizens of that state. *Edelman v. Jordan*, 415 U.S. 651, 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Where a state has not waived its immunity, and there has been no Congressional abrogation, the Eleventh Amendment acts as a jurisdictional bar to a federal court lawsuit against a state. *Wolfel v. Morris*, 972 F.2d 712, 718 (6th Cir. 1992). Ohio has not waived its sovereign immunity, and Congress did not disturb the states' Eleventh Amendment immunity when it passed 42 U.S.C. § 1983. (Id. at 718); *McCormick v. Miami Univ.*, 693 F.3d 654, 664 (6th Cir. 2012); *Mackey v. Cleveland State Univ.*, 837 F. Supp. 1396, 1403 (N.D. Ohio 1993). State law claims brought in federal court, for either money damages or injunctive relief, are barred by the Eleventh Amendment. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Missouri v. Fiske*, 290 U.S. 18, 27, 54 S.Ct. 18, 78 L.Ed. 145 (1933).

Accordingly, to the extent Plaintiff sues Defendants in their official capacity or sues for state-law claims, Defendants contend that the Eleventh Amendment bars those claims seeking monetary damages, warranting their dismissal. The undersigned agrees.

*2. Eighth Amendment*

Next, Defendants contend that their actions do not constitute deliberate indifference in violation of the Eighth Amendment. Prison officials have a duty under the Eighth Amendment to protect prisoners from violence at the hands of other prisoners. *Reedy v. West*, 988 F.3d 907, 912 (6th Cir. 2021). However, not "every injury suffered by one prisoner at the hands of another … translates into constitutional liability for prison officials." *Varmado-El v. Martin,* 52 Fed. Appx. 764, 765 (6th Cir. 2002) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "A general vulnerability to attack is normally insufficient for an Eighth Amendment claim; rather, an officer must know about an inmate's 'specific situation.'" *Schoonover v. Rogers*, 2022 WL 12258998 (6th Cir. 2022).

To establish an Eighth Amendment failure-to-protect claim, an inmate must show that prison officials acted with 'deliberate indifference' to 'a substantial risk of serious harm.' A viable claim has both an objective and a subjective prong, requiring the plaintiff to demonstrate that '(1) the alleged mistreatment was objectively serious; and (2) the defendant subjectively ignored the risk to the inmate's safety.'" *Zakora v. Chrisman*, 44 F.4th 452, 468 (6th Cir. 2022) (citing *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011)). Th[e] [objective component] analysis must consider the likelihood of harm to the injured party in the context of the circumstances that led to the injury. Id. (citing *Reedy v. West*, 988 F.3d 907, 909, 912-14 (6th Cir. 2021)). "The subjective component "requires the inmate to show 'that the individual defendants (1) were aware of facts from which the

9

inference could be drawn that a substantial risk of serious harm exists; (2) actually drew the inference; and (3) consciously disregarded the risk.'" *Price v. Ohio Dep't of Rehab.*, 649 F.Supp. 3d 598, 605 (S.D. Ohio Jan. 3, 2023) (quoting *Westmoreland v. Butler Cty.*, 29 F.4th 721, 726 (6th Cir. 2022)).

Here, Defendant O'Connor argues that there is no record evidence showing that he was aware of facts from which he could infer a risk of serious harm to Plaintiff. Nor that he, in fact, drew such inference and then he consciously disregarded the risk, as required to show a violation of Plaintiff's rights under the Eighth Amendment. *See Price v. Ohio Dep't of Rehab.*, 649 F. Supp. 3d 598, 605 (S.D. Ohio Jan. 3, 2023).

As noted above, Defendant O'Connor is the unit manager at SOCF. Mr. O'Connor was the SOCF official responsible for Plaintiff's assignment to IDR. (Doc. 27, Ex. A, ¶ 3). In September of 2022, there was a high need for prisoner staffing in the IDR. Id. Mr. O'Connor informed Plaintiff of the proposed reassignment, and met with Plaintiff so that he could complete the paperwork and discuss any necessary matter. (Doc. 27, Def. Ex. A, ¶¶ 4-5, 10). Plaintiff made no mention of an inmate or group of inmates in the IDR that posed him any risk. Id. Nor did he request PC placement at that time. Id. at ¶¶ 5-6. Plaintiff also did not submit any written materials or documentation for consideration, and he expressly declined his right to appeal the placement on the DRC Form 2099. (Id. at ¶¶5, 10; Def. Ex. B, ¶ 3.b.iv.-vi.; Doc. 27, Def. Ex. B-3).

In his declaration filed in opposition to Defendants' motion for summary judgment, Plaintiff asserts:

> On September 8, 2022 at 11:00 am I told Defendant O'Connor that I filed a lawsuit against multiple officers in the Southern Ohio Correctional Facility (SOCF) …. As a result, the Officers …..labeled me a 'snitch.' I then warned Defendant O'Connor that Inmate Richey was assigned to the chow hall and

10

> I feared for my life and safety due to the fact that said inmate threatened to beat me up once we were out of ERH. As a result of my fear, I requested Protective Control (PC). Defendant O'Connor did not order PC for me and then told me, "you don't need PC, You'll be fine." Defendant O'Connor then assigned me to the Chow hall in disregard of my warning in the fact of my request for PC.

(Doc. 31, Bates Decl. ¶ 1).

However, "[s]elf-serving affidavits alone, however, are not enough to create an issue of fact sufficient to survive summary judgment." *Am. Nat'l Prop. & Cas. Co. v. Williamson*, 547 F. Supp. 3d 741, 750 (S.D. Ohio 2021). Moreover, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Chappell v. Woods,* 2018 U.S. Dist. LEXIS 173263, *7, 2018 WL 4898948 (S.D. Ohio, Oct. 9, 2018) (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007). Plaintiff's allegation that he told Defendant O'Connor that he feared for his life and requested PC is blatantly contradicted by the record.

As noted by Defendant, Plaintiff had no separation order against Mr. Richey or any other inmate in the IDR, such that Mr. O'Connor may infer he could be harmed there. Plaintiff did not request PC until November of 2022, two months after the assault. Plaintiff was notified on DRC Form 2099 that he was being reassigned to the IDR. On that form, Plaintiff could report any safety concerns, but he did not. He could also report them to Mr. O'Connor. There is no evidence that he did so except for the unsworn statement of Plaintiff.

11

In light of the foregoing, the undesigned finds that Defendant O'Connor is entitled to judgment as a matter of law with respect to Plaintiff's Eighth Amendment claims against him.

Similarly, Defendant Hood argues that he is entitled to judgment as a matter of law because the undisputed evidence established that he was not deliberately indifferent to inmate Richey's attack on Plaintiff. The undersigned agrees. As detailed above, the video evidence shows as soon as Defendant Hood became aware of the altercation in question, he immediately moved towards the altercation while calling for backup.

As noted by Defendants, within three seconds of Richey's unexpected attack, Officer Hood has begun radioing for backup and moving to the location of the inmates. (Doc. 27, Def. Ex. D, Declaration of Officer Hood, ¶ 9). Within nine seconds, Officer Hood has completed his radio transmission and has begun announcing loud, verbal de-escalation orders. Within nineteen seconds, Officer Hood has arrived at the altercation, and successfully ordered the inmates to separate and ended the altercation. As such, Defendants contend that following this specific protocol cannot be said to amount to a conscious disregard of Plaintiff's safety. The undersigned agrees. *See Hargrove v. Holley,* No. 1:17-CV-560, 2020 WL 1042620, at *7 (S.D. Ohio Mar. 4, 2020), *report and recommendation adopted,* No. 1:17-CV-560, 2020 WL 5651476 (S.D. Ohio Sept. 22, 2020) (granting summary judgment to the officers where they requested backup officer support and did not physically intervene until backup arrived). See also *Johnson v. Henderson,* No. 1:16-CV-1020, 2018 WL 710288, at *5 (S.D. Ohio Feb. 2, 2018), report and recommendation adopted, No. 1:16-CV-1020, 2018 WL 2271007 (S.D. Ohio May 17, 2018)("Defendants responded reasonably to the incident within seconds and stopped

inmate Wing from harming plaintiff further, which ultimately precludes Eighth Amendment liability.").

  3. *Qualified Immunity.*

  Defendants are also entitled to qualified immunity as to all of Plaintiff's claims. Notably, qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity not only insulates government officials from individual liability for money damages, but from the burdens and expenses of litigation and trial. *Saucier v. Katz*, 533 U.S. 194, 200–201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

  The doctrine of qualified immunity is intended to balance the following competing interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably*." Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 815, 172 L.Ed. 2d 565 (2009). Qualified immunity "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 343, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271, (1986)). *See also Dorsey v. Barber*, 517 F.3d 389, 394 (6th Cir. 2008).

  Qualified immunity applies regardless of whether the official's error was a mistake of law or a mistake of fact, or a mistake based on mixed questions of law and fact. *Pearson*, 555 U.S. at 231, 129 S.Ct. 808. Here, Defendants are entitled to qualified

13

immunity in their individual capacities on the record presented because Plaintiff has failed to show that any Defendant violated any clearly established constitutional right of which a reasonable person would have known.

For these reasons, the undersigned finds that Defendants' motion for summary judgment should be granted, *in toto*.

### III. Conclusion

In light of the foregoing, it is herein **RECOMMENDED** that Defendants' motion for Summary Judgment (Doc. 27) be **GRANTED** and this case be **CLOSED.**

*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| ROBERT BATES, | Case No. 1:23-cv-17 |
| Plaintiff, | |
| vs. | Hopkins, J.<br>Bowman, M.J. |
| CASE MANAGER O'CONNOR, *et al.*, | |
| Defendants. | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).